# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID WILSON PEPE,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 19–cv–03067** |
| | : | |
| **MARIROSA LAMAS, et al.,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                    **August 18, 2022**

      Plaintiff David Wilson Pepe ("Pepe" or "Plaintiff") filed this suit *pro se* against

Defendants, Ms. Marirosa Lamas ("Defendant Lamas" or "Lamas"), Ms. Novak ("Defendant

Novak" or "Novak"), Ms. J. Walker ("Defendant Walker" or "Walker"), and Ms. Neko Bourne

("Defendant Bourne" or "Bourne") (collectively, "Defendants") alleging constitutional violations

brought under 42 U.S.C § 1983 ("§ 1983").[1] Specifically, Plaintiff alleges that Defendants

violated his constitutional rights by retaliating against him for the protected activity of filing

grievances. Presently before the Court is Defendants' Motion to Dismiss (ECF No. 43), which

asks this Court to dismiss the action in its entirety pursuant to Federal Rule of Civil Procedure

12(b)(6). ECF No. 43. For the reasons below, this Court finds that Plaintiff has not sufficiently

alleged a constitutional violation on which to sustain his § 1983 claims, and will, accordingly,

---

[1] Plaintiff Pepe is an incarcerated individual at SCI–Chester and is proceeding in this litigation
*pro se*. During the time-period relevant to Plaintiff's claims, Defendant Lamas was the
Superintendent of SCI-Chester, Defendant Novak was the Corrections Employment Vocational
Coordinator ("Employment Coordinator") at SCI–Chester, Defendant Bourne was the Unit
Manager of SCI–Chester, and Defendant Walker was the Corrections Food Services Supervisor
at SCI–Chester.

GRANT Defendants' Motion to Dismiss (ECF No. 43). The case will be wholly dismissed without prejudice.

## I. PROCEDURAL HISTORY

On July 12, 2019, Plaintiff filed his initial Complaint *pro se* in the United States District Court for the Eastern District of Pennsylvania. ECF No. 2. At that time, the case was assigned to the Hon. Judge C. Darnell Jones, II. On September 18, 2019, Defendants filed an initial Motion to Dismiss. ECF No. 11. On October 10, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. ECF No. 12. Prior to Judge Jones ruling on the initial Motion to Dismiss, on December 30, 2019, Plaintiff filed a Motion for Appointment of Counsel. ECF No. 19. On January 2, 2020, Judge Jones issued an Order placing the case in suspense, while the Clerk of Court attempted to appoint counsel to Plaintiff from an attorney panel. *See* ECF Nos. 19, 20. Approximately a year later, on December 17, 2021, Plaintiff filed a letter explaining that he wished to proceed *pro se* and asking the Court to remove the case from suspense status. ECF No. 35. Judge Jones issued an Order granting Plaintiff's request on January 5, 2022. ECF No. 36.

On June 17, 2022, this case was reassigned to the Hon. Chad F. Kenney for all further proceedings. ECF No. 38. On July 3, 2022, Defendants filed a second Motion to Dismiss. ECF No. 40. Prior to responding to Defendants' Motion to Dismiss, on July 18, 2022, Plaintiff filed a document (ECF No. 41) requesting that the Court allow Plaintiff to supplement the Complaint with additional facts. On that same day, and in response to Plaintiff's request (ECF No. 41), the Court issued an Order (ECF No. 42) providing that in light of Plaintiff's *pro se* status the Court would consider and treat Plaintiff's request (ECF No. 41) as a Motion to Amend the Complaint and would therefore treat the allegations set forth in the initial Complaint (ECF No. 2) and the additional facts alleged in the Motion to Amend the Complaint (ECF No. 41) collectively as a

single Amended Complaint. *See* ECF No. 42. Defendants' Motion to Dismiss (ECF No. 40) was

therefore denied as moot.

On July 27, 2022, Defendants filed an updated Motion to Dismiss (ECF No. 43), and on

July 29, 2022, Plaintiff filed a *pro se* Response to Defendants' Motion to Dismiss (ECF No. 44).[2]

## II. BACKGROUND[3]

Plaintiff Pepe alleges that on August 8, 2018, he was fired from his "wheelchair pusher job"

at SCI–Chester by Defendant Bourne because other inmates complained to Bourne that Plaintiff

was not doing his job. ECF No. 2 at 18. Plaintiff disputed the facts surrounding his termination

by filing two inmate request slips. ECF No. 2 at 19–20; ECF No. 2 Ex. B at 36–37. In these

inmate requests slips, Plaintiff explained his belief that the inmates who had complained about

him had done so out of racial animosity, and he also requested that he be assigned to work in the

inmate commissary or visiting room and to be put on "general labor pool pay" ("GLP-pay") until

he was assigned another job. ECF No. 2 Ex. B at 36–37. Additionally, Plaintiff filed Grievance

No. 752012, on August 9, 2018 (the "August 2018 Grievance") stating that he believed the

inmates who had complained about him, as well as Defendant Bourne, had all been acting out of

---

[2] The Court notes that given the timeline, it may be that Plaintiff's *pro se* Response was intended to be directed to the July 3, 2022 Motion to Dismiss (ECF No. 40), rather than the July 27, 2022 Motion to Dismiss (ECF No. 43). However, the Court finds it appropriate to consider the arguments raised in Plaintiff's Response (ECF No. 44) while deciding Defendants' pending Motion to Dismiss (ECF No. 43) given Plaintiff's *pro se* status and the fact that no additional response was filed by the relevant deadline.

[3] The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

racial animosity, and requesting again to either be placed on GLP-pay or assigned to work in the inmate commissary or visiting room. *See* ECF No. 2 Ex. G at 53. Ultimately, this Grievance was denied, and the denial was upheld on appeal based on findings that Plaintiff had refused to work his wheelchair pusher job and that he had provided no evidence to support his claim that Defendant Bourne was motivated by racism. ECF No. 2. Ex. G at 54.

On September 17, 2022, Plaintiff received notice from Employment Coordinator Novak that he had been assigned a job in SCI-Chester's Food Services Department (the "FSD"), which began on Friday, October 19, 2018. ECF No. 2 at 21. At the beginning of his first shift, Plaintiff informed Defendant Walker about incidents of previous "retaliation and harassment" that he had allegedly suffered working in the FSD at other correctional facilities.[4] *Id.* Plaintiff also informed Defendant Walker that he was expecting a guest-visitor who was scheduled to arrive within a half-hour. *Id.* Subsequently, Walker failed to tell Plaintiff in a timely manner about the arrival of the previously discussed guest-visitor, which resulted in the guest-visitor having to wait over an hour to visit with Plaintiff. ECF No. 2 at 21. In response to this incident, on October 25, 2018, Plaintiff filed Grievance No. 767092 at SCI–Chester (the "October 2018 Grievance"), alleging that the failure to timely advise Plaintiff of his guest-visitor amounted to "harassment and retaliation." ECF No. 2 Ex. D at 41. In the October 2018 Grievance, Plaintiff requested that he be "removed from [FSD work] all together [sic]" because he was "afraid for his life" and that he did

---

[4] In 2013 at SCI–Benner, Plaintiff filed Grievance No. 472223 alleging that Kitchen and Food Supervisor McConnell had lied by stating Plaintiff took an extra tray in the dining hall. ECF No. 2 at 28. Defendant Lamas, who was Superintendent of SCI–Brenner at that time, responded to Grievance No. 472223 with findings that the incident was a mistake on the part of staff. ECF No. 2 Ex. I at 66. In 2017 at SCI–Waymart, Plaintiff filed Grievance No. 675204 alleging that it was a conflict of interest to force him to work in an environment where he felt "threaten[ed]" and "afraid for his life." ECF No. 2 Ex. J at 69–70. As a result, the Superintendent of SCI–Waymart at that time, Jack Sommers, removed Plaintiff from his job in the Food Services Department and placed him on GLP-pay. *Id.* at 71.

"not trust[] any of the working supervisor's [sic] around" him. ECF No. 2 at 21; *see also* ECF No. 2 Ex. D at 41. Despite his stated fears, Plaintiff continued to report to his job in the FSD from October 19, 2018 through October 31, 2018. ECF No. 2 at 21.

On October 31, 2018, Plaintiff received an Initial Review Response to the October 2018 Grievance, which explained that the October 2018 Grievance had "been investigated" and the "allegations" therein were "found to be unsubstantiated," however, it also stated that due to Plaintiff's request for relief, the FSD was "willing to release" Plaintiff from his job in the FSD. ECF No. 2 at 22; *see also* ECF No. 2 Ex. D at 42. The Initial Review Response labeled the October 2018 Grievance "frivolous" and marked the October 2018 Grievance "denied." ECF No. 2 Ex. D at 42.

On November 1, 2018, Plaintiff submitted an Inmate Request Slip to Defendant Novak asking for a different work assignment and re-explaining the circumstances surrounding the October 2018 Grievance. ECF No. 2 Ex. E at 46–47. Novak responded on November 2, 2018, and, citing prison policy, explained that Plaintiff could not be assigned to a different job until he completed sixty days of work in his assignment in the FSD. *Id.* Novak explained that Plaintiff did not meet the criteria to work in the visiting room and that the waiting list to work in the commissary was very long. *Id.* Novak provided that Plaintiff had been assigned to the FSD because at the time he requested a job, the FSD had job openings. *Id.* Novak stated that since Plaintiff had requested to be removed from his position in the FSD he had "basically refused" the assignment. *Id.* Accordingly, Novak explained, per prison policy, Plaintiff would have to return to the FSD for at least sixty days before he could receive any other work assignments. ECF No. 2 Ex. E at 47; *see also* ECF No. 2 at 26. Plaintiff asserts that no such policy exists. ECF No. 2 at 26 ¶ 20.

On November 3, 2018, Plaintiff appealed the denial of the October 2018 Grievance, asking why he had not been put on GLP-pay pending a new work assignment. ECF No. 2 Ex. D at 43. On November 21, 2018, Defendant Lamas upheld the denial of the October 2018 Grievance providing that because Plaintiff had "requested to be removed from [his] kitchen job [he] had basically refused the assignment" and that accordingly, in order to "receive GLP[-pay] or any other work assignment" he would have to "go back to the [FSD] for 60-days." ECF No. 2 Ex. D at 44. Lamas also explained that Plaintiff had been given an offer to return to kitchen service, on November 2, 2018, but that he had not accepted this offer. ECF No. 2 Ex. D at 44.

On December 2, 2018, Plaintiff sent another Inmate Request Slip to Novak, once again, requesting a different work assignment. ECF No. 2 Ex. E at 46–48. Specifically, Plaintiff responded that he was requesting to receive a job assignment in the paint crew, electric crew, or commissary, "whenever there is an opening." ECF No. 2 Ex. E at 47. Novak responded on December 3, 2018, again citing prison policy and explaining that Plaintiff would not be eligible to be assigned to a different job until he completed sixty days of work in his original assignment in the FSD. ECF No. 2 Ex. E at 48. Novak also stated, however, that Plaintiff had been placed "on the waiting list for the 3 jobs" he had "listed" on the December 2, 2018 Inmate Request. *Id.*; *see also* ECF No. 2. Ex E at 47. To the response, Novak attached a portion of the Inmate Handbook's Policy No. DC-ADM 816, which is the policy on work assignments. ECF No. 2 Ex. E at 49. The portion of DC-ADM 816 that Novak provided explains that inmates "must accept any task assigned to them regardless of the amount of compensation offered in return" and that inmates "do not have a right to be assigned or continue to work in any particular work assignment." *Id.*

Plaintiff asserts that the decision to hold him to the 60-day requirement was a punishment in retaliation for the protected act of filing the October 2018 Grievance. ECF No. 2 at 26; *see also* ECF No. 2 Ex. F at 51, Inmate Handbook Policy ADM 804 (providing that an inmate "will not be sanctioned for good faith use of the grievance system"). Plaintiff further alleges that he has seen other inmates get into fights and either "get their same jobs back…or another job somewhere else" without being subject to the 60-day policy. ECF No. 41 at 3.

## III. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state 'a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility" that the defendant acted unlawfully. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When deciding a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). Courts consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

Additionally, a "pro se document is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). Such a complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Id.* (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972)). Yet, while courts do afford some flexibility to *pro se* parties, an unrepresented plaintiff still must comply with court rules and satisfy the appropriate pleading standards. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

### 1. Legal Standard

In order to establish a § 1983 claim, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.[5] *Simonton v. Tennis*, 437 Fed. Appx. 60, 61–62 (3d Cir. 2011) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)); 42 U.S.C. § 1983. In evaluating a § 1983 claim courts must "identify the exact contours of the underlying right said to have been violated" and determine

---

[5] To the extent that Plaintiff has sued the Defendants in their official capacities, federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984); *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140 (3d Cir. 1995), *cert. denied*, 516 U.S. 932 (1995). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under § 1983, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity in this context. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991) (noting that suits against state officials acting in their official capacities are suits against the employing government agency, and as such, are barred by the Eleventh Amendment); 42 Pa. Cons. Stat. Ann. §§ 8521–22. Since there has been no explicit waiver of sovereign immunity in this case, Plaintiff cannot recover monetary damages against the Defendants in their official capacities as those claims are barred by the Eleventh Amendment. Accordingly, any such claims shall be dismissed.

"whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708 (1998)).

## 2. Analysis

Given Plaintiff's *pro se* status, the Court reads the Amended Complaint liberally and finds that based upon Plaintiff's allegations, the possible constitutional violations alleged by Plaintiff that could support a § 1983 claim arise out of the First, Eighth, and Fourteenth Amendments. Ultimately, however, the Court finds that Plaintiff has failed to plausibly allege any constitutional violation that could be the basis for a § 1983 claim.

### i. *Plaintiff Has Failed to Plausibly Allege a First Amendment Claim.*

To establish a First Amendment retaliation claim under § 1983, Plaintiff must be able to show (a) that he engaged in a protected activity; (b) that he suffered an "adverse action"; and (c) that there exists a causal link between the protected activity and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, it is undisputed that Plaintiff has sufficiently pled a protected activity by alleging that he engaged in the filing of grievances. *See* ECF No. 43 at 12. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 293 (3d Cir. 2016) ("[f]iling a formal prison grievance clearly constitutes protected activity"). However, for the reasons below, the Court finds that Plaintiff has failed to sufficiently allege an adverse action on the part of Defendants that was done in retaliation for filing such grievances.

To qualify as "adverse," an action must be sufficient "to deter [an inmate] of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal citations and quotations omitted). The inquiry as to whether an adverse action would deter a prisoner of ordinary firmness from exercising his First Amendment rights "depend[s] on the facts of the particular case." *Allah*, 229 F.3d at 225. As a general rule conduct

must "go[] beyond threats or minor inconvenience" to constitute a "constitutionally violative adverse action." *Walker v. Mathis*, No. CV 15-5134, 2016 WL 2910082, at *6 (E.D. Pa. May 19, 2016), *aff'd*, 665 F. App'x 140 (3d Cir. 2016). With respect to cases involving the filing of prison grievances, the Third Circuit has affirmed that "[t]he rejection or denial of grievances does not, by itself, suggest that the action was adverse or retaliatory." *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.), *aff'd*, 358 F. App'x 302 (3d Cir. 2009).

Once an adverse action has been established, the plaintiff also bears the initial burden of proving that his constitutionally protected conduct was a "substantial or motivating factor" in the adverse action. *Mount Healthy Bd. Of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). To satisfy this causation element, Plaintiff can show that there was "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). Ultimately, however, "causation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Id.*

Here, Plaintiff's retaliation claim takes two potential forms. First, the Court concludes that, at least in some capacity, Plaintiff is alleging that Defendant Walker's failure to timely inform him of his guest-visitor's arrival was an adverse action done in retaliation for either the past grievances Plaintiff filed at other prison facilities or the filing of the August 2018 Grievance. Second, the Court also concludes, that Plaintiff is alleging that the requirement he work 60-days in the FSD before being eligible to change jobs constitutes an adverse action that was done in retaliation for the filing of the October 2018 Grievance. With respect to both potential claims, the Court finds that Plaintiff has failed to sufficiently allege an adverse action.

10

First, while the Court agrees that it is unfortunate Plaintiff's guest-visitor had to wait for an additional period of time due to Defendant Walker's actions, the Court finds that this type of singular, discrete inconvenience does not constitute an adverse action. In this particular case, Plaintiff does not allege any additional negative result or further injury that arose from this discrete incident, and absent any such allegations, the Court finds that Plaintiff's allegations do not constitute the type of action that would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *See Walker*, 2016 WL 2910082, at *6 (explaining conduct must "go[] beyond threats or minor inconvenience" to constitute a "constitutionally violative adverse action"). Indeed, in direct response to this alleged instance of "retaliation," Plaintiff Pepe actually did exercise his protected right to file a grievance by filing the October 2018 Grievance documenting the incident.[6] ECF No. 2 at 21 (explaining that Walker's failure to timely inform Plaintiff of his guest-visitor was what prompted Plaintiff to file the October 2018 Grievance).

Second, the Court finds that the alleged misapplication of the 60-day policy to Plaintiff does not constitute an adverse action for purposes of stating a First Amendment retaliation claim. Notably, Plaintiff is not alleging that he has been denied a prison job or that his removal from working in the FSD was retaliatory; instead, Plaintiff is alleging that requiring him to work in the

---

[6] In any case, even if Defendant Walker's failure to timely inform Plaintiff about his guest-visitor plausibly constituted an adverse-action, Plaintiff has failed to sufficiently plead a causal relationship between the prior grievances filed by Plaintiff Pepe in other correctional facilities and Defendant Walker's failure to timely inform him of the arrival of his guest-visitor. The filing of these prior grievances occurred in 2017 and 2013, and there are no other facts alleged that would support the conclusion that the prior grievances were in any way related to Walker's actions in October 2018. *See Scott v. Wetzel*, No. 13-cv-1149, 2013 WL 6858441, at *3 (W.D. Pa. Dec. 30, 2013) (noting that it is implausible and "probably inexplicable" that officials at another prison would retaliate on behalf of officials at an inmate's institution). Further, absent any additional factual allegations indicating causation, there is not a sufficient temporal link to infer causation between the August 2018 Grievance, involving Plaintiff's issues with Defendant Bourne, and the separate months-later actions of Walker in October 2018.

FSD for 60-days, rather than giving him a different assignment, constitutes a purposeful misapplication of prison policy done in retaliation for the filing of the October 2018 Grievance. *See e.g., Pepe v. Lamas*, 679 F. App'x 173, 176 (3d Cir. 2017) (finding that loss of a prison job can constitute an adverse action for purposes of a First Amendment retaliation claim). Plaintiff alleges that he was removed from work in the FSD on October 31, 2018 per his own request. ECF No. 2 Ex. D at 42*.* Then, two days later on November 2, 2018, Plaintiff was given the option to return to work in the FSD, and he chose not to do so. ECF No. 2 Ex. D at 44. In response to Plaintiff's Official Grievance Appeal, which Plaintiff relies on in his Amended Complaint, Defendant Lamas explained to Plaintiff that because he had "requested to be removed from the" FSD he had made himself "unavailable" for the job he had been assigned to. ECF No. 2 at 44. Lamas explained that per prison policy DC-ADM 816, this constituted a refusal to work and accordingly, he would have to work for sixty days in the FSD before being eligible for another job. *Id.* Additionally, Lamas explained that Plaintiff's decision to refuse to return to the FSD when offered a shift on November 2, 2022, also constituted a refusal to work. *Id.* Moreover, even though prison officials asserted they were applying the 60-day policy, Plaintiff was still put on the waitlist for three alternative jobs that he had specifically requested he be assigned to. ECF No. 2 Ex. E at 47. Taking the facts alleged in the Amended Complaint as true and viewing them in the light most favorable to Plaintiff, the Court finds that the misapplication of the 60-day policy is not the type of conduct that would "deter" an inmate "of ordinary firmness from exercising his First Amendment rights," particularly where Plaintiff had a choice to return to work, but refused, and where, despite the stated application of such policy, Plaintiff was put on the waitlist for three different jobs he had requested to work instead. *Allah*, 229 F.3d at 225; *cf. Walker*, 2016 WL 2910082, at *6 (finding that "removal from a work assignment for

two days" was insufficient to establish an adverse action); *see also* ECF No. 2 Ex. E at 47. Because the Court finds Plaintiff has failed to sufficiently plead any adverse action, the Court finds Plaintiff has failed to state a First Amendment retaliation claim.[7]

### ii. *Plaintiff Has Failed to Plausibly Allege an Eighth Amendment Claim.*

Reading the Amended Complaint liberally, the Court finds it is also possible Plaintiff is alleging that Bourne violated his Eighth Amendment rights by firing him from his wheelchair pusher job, that Walker violated his Eighth Amendment rights by failing to timely inform Plaintiff of his guest-visitor's arrival, or that Novak and Lamas violated his Eighth Amendment rights through the misapplication of the 60-day policy. However, upon careful review of the Amended Complaint, the Court finds none of these potential claims are sufficiently alleged to withstand Defendants' Motion to Dismiss.

The Eighth Amendment protects individuals against the infliction of "cruel or unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prisons have a duty to provide "humane conditions of confinement." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To violate the Eighth

---

[7] Additionally, even if the application of the 60-day policy could plausibly constitute an adverse action, the Court finds that Plaintiff has failed to sufficiently plead causation. While it is plausible, based on the facts alleged in the Amended Complaint, that Plaintiff's request to cease working in the FSD contained in the October 2018 Grievance and his subsequent refusal to return to work in the FSD caused prison officials to institute the 60-day policy, it is not plausible, based on the facts alleged, that the application of the 60-day policy to Plaintiff (whether or not it constitutes consistent or correct application of prison policy) was done in retaliation for the actual protected act of *filing a grievance*, especially where Plaintiff was actually placed on the waitlist for three other jobs of his choice. *Cf. Banks v. Rozum*, 639 F. App'x 778, 783 (3d Cir. 2016) ("the merely incidental loss of a job upon transfer when jobs are not available is not a circumstance where an inmate's protected activity caused an adverse action"); ECF No. 2 Ex. E at 47. Accordingly, Plaintiff's conclusory allegation that the alleged misapplication of the 60-day policy was retaliatory is insufficient to establish causation at the motion to dismiss stage.

Amendment, a deprivation "must result in the denial of the minimal civilized measure of life's necessities." *Watson v. Secretary Pa. Dept. Corrections*, 567 Fed. Appx. 75 (3d Cir. 2014).

A prison official's one-time failure to timely inform an inmate of a guest-visitor's arrival resulting in a delayed visit does not constitute the significant deprivation of rights contemplated by the Eighth Amendment. Likewise, removal from a particular prison job or lack of choice over which prison job one is assigned to does not fall within the scope of an Eighth Amendment violation. *Cf. Watson*, 567 Fed. Appx. at 78 (dismissing plaintiff's claim of Eighth Amendment on the grounds that a "failure to reinstate [the plaintiff] in his prison job did not violate his Eighth Amendment right to be free from cruel and unusual punishment). Absent any additional allegations involving the denial of humane conditions of confinement or any of life's necessities, the Court finds that Plaintiff has failed to plausibly allege an Eighth Amendment claim.

### iii. *Plaintiff Has Failed to Plausibly Allege a Fourteenth Amendment Claim.*

Upon careful review of the Amended Complaint, the Court finds that Plaintiff is also possibly alleging that the misapplication of the 60-day policy constitutes a Fourteenth Amendment violation. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order for Plaintiff to state a cognizable claim that he was without due process, he must either have a liberty or a property interest in the right being deprived. *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989). "A prison inmate only has a liberty interest in a condition of confinement if it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Key v. McKinney*, 176 F.3d 1083, 1086–87 (8th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Restriction from employment is among the "conditions of confinement that [Plaintiff] should reasonably anticipate during his incarceration." *Fountain v.*

*Vaughn*, 679 Fed. Appx. 117, 120 (3d Cir. 2017). In other words, "there is no liberty interest in a prison job arising from the Due Process Clause." *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012). Further, an inmate also does not have a protected interest in a specific prison job assignment. *See Quinlan*, 866 F.2d at 630 ("[t]raditionally, prisoners have had no entitlement to a specific job, or even any job").

Assuming Plaintiff's allegations are true and the requirement that Plaintiff work in the FSD for 60-days before becoming eligible for a different prison job was a misapplication of prison policy, this conduct does not equate to a Fourteenth Amendment violation, where Plaintiff has not pled facts showing any constitutionally protected right being denied. Thus, the Court finds Plaintiff has failed to plead facts sufficient to establish a Fourteenth Amendment claim that could support his asserted § 1983 claims. *Cf. Fountain v. Vaughn*, 679 Fed. Appx. 117, 120 (3d Cir. 2017) (finding a plaintiff's "claim related to his loss of prison employment is not cognizable under the Due Process Clause…[because] restriction from employment and prison programs are among the conditions of confinement that [plaintiff] should reasonably anticipate during his incarceration").

## V.   CONCLUSION

For the foregoing reasons, this Court will GRANT Defendants' Motion to Dismiss and dismiss Plaintiff's Amended Complaint in its entirety, without prejudice. An appropriate order will follow.

BY THE COURT:

**/s/ *Chad F. Kenney***

_____

Chad F. Kenney, Judge