IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID WILSON PEPE,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 19–cv–03067 |
| | : | |
| **MARIROSA LAMAS, et al.,** | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                       **November 21, 2022**

Plaintiff David Wilson Pepe ("Pepe" or "Plaintiff") filed this suit *pro se* against Defendants, Ms. Marirosa Lamas ("Defendant Lamas" or "Lamas"), Ms. Novak ("Defendant Novak" or "Novak"), Ms. J. Walker ("Defendant Walker" or "Walker"), and Ms. Neko Bourne ("Defendant Bourne" or "Bourne") (collectively, "Defendants") alleging constitutional violations brought under 42 U.S.C § 1983 ("§ 1983").[1] Specifically, Plaintiff alleges that Defendants violated his constitutional rights by retaliating against him for the protected activity of filing grievances while incarcerated.

Previously, on August 18, 2022, this Court granted a Motion to Dismiss brought by Defendants' that dismissed a prior Amended Complaint for failure to state a claim under Federal

---

[1] Plaintiff Pepe is an incarcerated individual at SCI–Chester and is proceeding in this litigation *pro se*. During the time-period relevant to Plaintiff's claims, Defendant Lamas was the Superintendent of SCI-Chester, Defendant Novak was the Corrections Employment Vocational Coordinator ("Employment Coordinator") at SCI–Chester, Defendant Bourne was the Unit Manager of SCI–Chester, and Defendant Walker was the Corrections Food Services Supervisor at SCI–Chester.

1

Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 46, 47. On September 26, 2022, Plaintiff filed a Second Amended Complaint, which Defendants, again, moved to dismiss for failure to state a claim. *See* ECF Nos. 50, 53.

For the reasons set forth below, this Court finds that Plaintiff has failed to state a claim upon which relief may be granted and the Second Amended Complaint (ECF No. 50) will be dismissed.[2]

## I. PROCEDURAL HISTORY

On July 12, 2019, Plaintiff filed his initial Complaint *pro se* in the United States District Court for the Eastern District of Pennsylvania. ECF No. 2. At that time, the case was assigned to the Hon. Judge C. Darnell Jones, II. On September 18, 2019, Defendants filed an initial Motion to Dismiss. ECF No. 11. On October 10, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. ECF No. 12. Prior to Judge Jones ruling on the initial Motion to Dismiss, on December 30, 2019, Plaintiff filed a Motion for Appointment of Counsel. ECF No. 19. On January 2, 2020, Judge Jones issued an Order placing the case in suspense, while the Clerk of Court attempted to appoint counsel to Plaintiff from an attorney panel. *See* ECF Nos. 19, 20. Approximately a year later, on December 17, 2021, Plaintiff filed a letter explaining that he wished to proceed *pro se* and asking the Court to remove the case from suspense status. ECF No. 35. Judge Jones issued an Order granting Plaintiff's request on January 5, 2022. ECF No. 36.

---

[2] The Court notes that, in large part, the allegations set forth in the Second Amended Complaint merely reiterate and reinforce the allegations made by Plaintiff in the prior Amended Complaint; thus, the Second Amended Complaint will be dismissed for many of the same reasons set forth in this Court's prior Memorandum and Order, as set forth below. *See* ECF Nos. 47, 49. The allegations that differ from the prior Amended Complaint and any new arguments made by Plaintiff are also addressed below.

On June 17, 2022, this case was reassigned to the Hon. Chad F. Kenney for all further proceedings. ECF No. 38. On July 3, 2022, Defendants filed a second Motion to Dismiss. ECF No. 40. Prior to responding to Defendants' Motion to Dismiss, on July 18, 2022, Plaintiff filed a document (ECF No. 41) requesting that the Court allow Plaintiff to supplement the Complaint with additional facts. On that same day, and in response to Plaintiff's request (ECF No. 41), the Court issued an Order (ECF No. 42) providing that in light of Plaintiff's *pro se* status the Court would consider and treat Plaintiff's request (ECF No. 41) as a Motion to Amend the Complaint and would therefore treat the allegations set forth in the initial Complaint (ECF No. 2) and the additional facts alleged in the Motion to Amend the Complaint (ECF No. 41) collectively as a single Amended Complaint. *See* ECF No. 42. Defendants' Motion to Dismiss (ECF No. 40) was therefore denied as moot.

On July 27, 2022, Defendants filed an updated Motion to Dismiss (ECF No. 43), and on July 29, 2022, Plaintiff filed a *pro se* Response to Defendants' Motion to Dismiss (ECF No. 44).[3]

On August 18, 2022, this Court issued a Memorandum and Order dismissing Plaintiff's Amended Complaint for failure to state a claim. *See* ECF Nos. 46, 47.

On September 26, 2022, Plaintiff Pepe filed the Second Amended Complaint (ECF No. 52), which the Court deemed timely given Plaintiff's *pro se* status. ECF No. 50.

---

[3] The Court notes that given the timeline, it may be that Plaintiff's *pro se* Response was intended to be directed to the July 3, 2022 Motion to Dismiss (ECF No. 40), rather than the July 27, 2022 Motion to Dismiss (ECF No. 43). However, the Court found it appropriate to consider the arguments raised in Plaintiff's Response (ECF No. 44) while deciding Defendants' prior Motion to Dismiss (ECF No. 43) given Plaintiff's *pro se* status and the fact that no additional response was filed by the relevant deadline.

On October 6, 2022, Plaintiff filed a supplemental Declaration, which given Plaintiff's *pro se* status, the Court will consider in conjunction with the Second Amended Complaint. ECF No. 53.

On October 11, 2022, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim. ECF No. 53. Plaintiff filed a Response to the Motion to Dismiss on November 11, 2022. ECF No. 54.

## II. BACKGROUND[4]

Plaintiff Pepe alleges that, in August 2018, he was fired from his "wheelchair pusher job" at SCI-Chester by Defendant Bourne because other inmates complained to Bourne that Plaintiff was not doing his job. *See* ECF No. 50 at 4. In response, Plaintiff filed inmate request slips on August 8, 2018 (ECF No. 50 Ex. C at 19), August 9, 2018 (ECF No. 40 Ex. C at 20), and August 27, 2018 (ECF N0. 50 Ex. D at 23). In these inmate requests slips, Plaintiff challenged the reasoning for his termination by explaining his belief that the inmates who had complained about him had done so out of racial animosity, and he also requested that he be assigned to work in the inmate commissary or visiting room or to be put on "general labor pool pay" ("GLP-pay") until he was assigned another job. ECF N0. 50 Ex. C, Ex. D.

Additionally, Plaintiff filed Grievance No. 752012, on August 9, 2018 (the "August 2018 Grievance") stating that he believed the inmates who had complained about him, as well as Defendant Bourne, been acting out of racial animosity, and requesting again either to be placed

---

[4] The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

4

on GLP-pay or assigned to work in the inmate commissary or visiting room. *See* ECF No. 50 Ex. E, Ex. F.  Ultimately, on September 6, 2018, the August 2018 Grievance was found to be "unsubstantiated" and was marked "frivolous" and "denied." ECF No. 50 Ex. E at 25. In the Denial, Lieutenant K. Kaiser instructed Plaintiff Pepe that he could "write a request to staff to inmate employment to seek another job." *Id.*

On September 10, 2018, Plaintiff Pepe appealed the denial of the August 2018 Grievance, reiterating his argument that other inmates had acted out of racial animosity and that Ms. Bourne had failed to ask for his side of the story before terminating him. ECF No. 50 Ex. F at 27.

On September 11, 2018, Plaintiff Pepe submitted an Inmate Request Slip to Defendant Novak, asking why he had not been receiving GLP-pay and reiterating his prior request for a job in the inmate visiting room or commissary. ECF No. 50 Ex. G.at 30.

On September 27, 2018, the denial of the 2018 Grievance was upheld on appeal by Defendant Lamas based on findings that Plaintiff had refused to work his wheelchair pusher job and that he had provided no evidence to support his claim that Defendant Bourne was motivated by racism. ECF No. 50 at Ex. F at 28.

In response to his September 11, 2018 Inmate Request Slip, Plaintiff received notice from Employment Coordinator Novak on September 17, 2022 that he had been assigned a job in SCI-Chester's Food Services Department (the "FSD"), which began on Friday, October 19, 2018. ECF No. 50 Ex. G at 30.

On October 25, 2018, Plaintiff filed Grievance No. 767092 at SCI-Chester (the "October 2018 Grievance"), alleging that at the beginning of his first shift in the FSD at SCI-Chester, Plaintiff had informed Defendant Walker that he was expecting a guest-visitor who was scheduled to arrive within a half-hour. ECF No. 50 Ex. A at 15. According to Plaintiff, Walker

5

subsequently failed to tell Plaintiff in a timely manner about the arrival of the previously discussed guest-visitor, which resulted in the guest-visitor having to wait over an hour to visit with Plaintiff. *Id.* Plaintiff specifically alleged that the failure to timely advise Plaintiff of his guest-visitor amounted to "harassment and retaliation," and requested as relief for his Grievance that he be "removed from [FSD work] all together [sic]" because he was "afraid for his life" and that he did "not trust[] any of the working supervisor's [sic] around" him. *Id.*

On October 31, 2018, Plaintiff received an Initial Review Response to the October 2018 Grievance, which explained that the October 2018 Grievance had "been investigated" and the "allegations" therein were "found to be unsubstantiated," however, it also stated that due to Plaintiff's request for relief, the FSD was "willing to release" Plaintiff from his job in the FSD. ECF No. 50 Ex. B at 17. The Initial Review Response labeled the October 2018 Grievance "frivolous" and marked the October 2018 Grievance "denied." *Id.*

Finally, Plaintiff alleges that on December 2, 2018, after he was "[g]ranted" his relief to be removed from work in the FSD, he filed an Inmate Request Slip asking to be placed on the paint crew, electric crew, or the inmate commissary, but that he was told he had to "go back and work in the [FSD] again…for 60-days" before he could be assigned to a different job or put on the waiting list for a different job. ECF No. 50 at 2.

I. **STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state 'a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility" that the defendant acted unlawfully. *Id.* "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When deciding a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). Courts consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

Additionally, a "pro se document is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). Such a complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Id.* (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972)). Yet, while courts do afford some flexibility to *pro se* parties, an unrepresented plaintiff still must comply with court rules and satisfy the appropriate pleading standards. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

### 1. Legal Standard

In order to establish a § 1983 claim, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color state law; and (2) the conduct

7

violated a right, privilege, or immunity secured by the Constitution or laws of the United States.[5] *Simonton v. Tennis*, 437 Fed. Appx. 60, 61–62 (3d Cir. 2011) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)); 42 U.S.C. § 1983. In evaluating a § 1983 claim, courts must "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708 (1998)).

2. Analysis

Given Plaintiff's *pro se* status, the Court reads the Amended Complaint liberally and finds that based upon Plaintiff's allegations, the possible constitutional violations alleged by Plaintiff that could support a § 1983 claim arise out of the First, Eighth, and Fourteenth Amendments. Ultimately, however, the Court finds that Plaintiff has failed to plausibly allege any constitutional violation that could be the basis for a § 1983 claim.

i. ***Plaintiff Has Failed to Plausibly Allege a First Amendment Retaliation Claim.***

To establish a First Amendment retaliation claim under § 1983, Plaintiff must be able to show (a) that he engaged in a protected activity; (b) that he suffered an "adverse action"; and (c) that there exists a causal link between the protected activity and the adverse action. *Mitchell v.*

---

[5] To the extent that Plaintiff has sued the Defendants in their official capacities, federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984); *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140 (3d Cir. 1995), *cert. denied*, 516 U.S. 932 (1995). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under § 1983, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity in this context. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991) (noting that suits against state officials acting in their official capacities are suits against the employing government agency, and as such, are barred by the Eleventh Amendment); 42 Pa. Cons. Stat. Ann. §§ 8521–22. Since there has been no explicit waiver of sovereign immunity in this case, Plaintiff cannot recover monetary damages against the Defendants in their official capacities as those claims are barred by the Eleventh Amendment. Accordingly, any such claims shall be dismissed.

*Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, it is undisputed that Plaintiff has sufficiently pled a protected activity by alleging that he engaged in the filing of grievances. *See* ECF No. 53 at 12. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 293 (3d Cir. 2016) ("[f]iling a formal prison grievance clearly constitutes protected activity"). However, for the reasons below, the Court finds that Plaintiff has failed to sufficiently allege an adverse action on the part of Defendants that was done in retaliation for filing such grievances.

To qualify as "adverse," an action must be sufficient "to deter [an inmate] of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal citations omitted). The inquiry as to whether an adverse action would deter a prisoner of ordinary firmness from exercising his First Amendment rights "depend[s] on the facts of the particular case." *Allah*, 229 F.3d at 225. As a general rule conduct must "go[] beyond threats or minor inconvenience" to constitute a "constitutionally violative adverse action." *Walker v. Mathis*, No. CV 15-5134, 2016 WL 2910082, at *6 (E.D. Pa. May 19, 2016), *aff'd*, 665 F. App'x 140 (3d Cir. 2016). With respect to cases involving the filing of prison grievances, the Third Circuit has affirmed that "[t]he rejection or denial of grievances does not, by itself, suggest that the action was adverse or retaliatory." *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.), *aff'd*, 358 F. App'x 302 (3d Cir. 2009).

Once an adverse action has been established, the plaintiff also bears the initial burden of proving that his constitutionally protected conduct was a "substantial or motivating factor" in the adverse action. *Mount Healthy Bd. Of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). To satisfy this causation element, Plaintiff can show that there was "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424

9

(3d Cir. 2016). Ultimately, however, "causation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Id.*

In the Second Amended Complaint, as in the prior Amended Complaint, Plaintiff asserts that he suffered adverse actions in retaliation for his use of the prison grievance system when he was removed from his prison job after filing the October 2018 Grievance against Defendant Walker.[6] More specifically, in the Second Amended Complaint, Plaintiff alleges that he engaged in the protected activity of filing grievances, and that as a result he is being "punished" by not being reinstated to another prison job or being placed on GLP-pay. ECF No. 50 at 10. Plaintiff alleges that after he was granted his requested relief (that is, "to be removed from the [FSD] all together"), Defendants failed to "[h]onor their agreement in good faith…" because he was not "reinstated to any other job[.]" ECF No. 50 at 10, 11.

Plaintiff asserts that on December 2, 2018, after he was "[g]ranted" his relief to be removed from work in the FSD, he filed an Inmate Request Slip asking to be placed on the paint crew, electric crew, or the inmate commissary and that he was told he had to "go back and work in the [FSD] again…for 60-days." ECF No. 50 at 2.

---

[6] In his prior Amended Complaint, Plaintiff Pepe also alleged, at least in some capacity, that Defendant Walker's failure to timely inform him of his guest-visitor's arrival was an adverse action done in retaliation for either the past grievances Plaintiff filed at other prison facilities or the filing of the August 2018 Grievance. Although Plaintiff does not appear to be making that allegation in the present Second Amended Complaint, the Court notes that, to the extent Plaintiff is re-asserting this claim, its reasoning for dismissing this claim remains the same as in the prior Memorandum & Order dismissing the previous Amended Complaint, and the Court adopts that reasoning herein. *See* ECF No. 46 at 11.

Additionally, in his prior Amended Complaint, Plaintiff Pepe alleged that Defendants misapplied the 60-day policy to him in retaliation for filing the October 2018 Grievance. Although Plaintiff appears to have recast this argument, to the extent Plaintiff's allegations are the same as the prior Amended Complaint, the Court finds that its reasoning for dismissing this claim in its prior Memorandum and Order also remains the same and the Court also adopts that reasoning herein. *See id.* at 11–13.

While loss of a prison job can constitute an adverse employment action, here, Plaintiff's removal from the FSD does not qualify as an adverse action because not only was Plaintiff removed from the FSD based on his own request, but also, he was given the option to return to the FSD to work for 60-days before seeking different employment. ECF No. 50; *see Walker*, 2016 WL 2910082 at *6 (finding that "removal from a work assignment for two days" was insufficient to establish an adverse action).

Effectively, Plaintiff argues that when he received the Initial Review Response to his October 2018 Grievance which, despite denying the Grievance and marking it frivolous, provided that the FSD was "willing to release" Plaintiff from his job in the FSD, he understood it to mean that he would either be placed on GLP-pay or be able to submit requests for different prison employment.[7] ECF No. 50 at 2. By Plaintiff's own account, when he tried to seek different employment, he was then told he had to return to work in the kitchen for 60-days. ECF No. 50 at 2. Plaintiff was not denied employment outright, as he does not allege that at any point, he was denied the opportunity to work in the FSD or that he had his job in the FSD taken away for any retaliatory reason. *See generally* ECF No. 50. Requiring Plaintiff to work in the FSD for 60-days before seeking other employment or receiving GLP-pay is not the type of conduct that would "deter" an inmate of "ordinary firmness from exercising his First Amendment rights," and therefore cannot constitute an adverse action. *Allah*, 229 F.3d at 225. Thus, because the Court finds Plaintiff has failed to sufficiently plead any adverse action, the Court finds Plaintiff has failed to state a First Amendment retaliation claim.

### ii. *Plaintiff Has Failed to Plausibly Allege a Fourteenth Amendment Equal Protection Claim.*

---

[7] To support his interpretation of the response to the October 2018 Grievance, Plaintiff emphasizes that a request for relief related to a grievance is distinct from an inmate request slip, however, this distinction is irrelevant to the Court's reasoning here.

Plaintiff also alleges that Defendant Bourne violated his Equal Protection rights when she terminated Plaintiff from his wheelchair pusher job. ECF No. 50 at 5. According to Plaintiff, Defendant Bourne believed two racist inmates, who told Defendant Bourne that Plaintiff was not doing his wheelchair pusher duties. Plaintiff provides that Defendant Bourne did not ask other corrections officers or inmates about whether Plaintiff was doing his job, and that this was negligent[8] and that the decision to terminate him from the wheelchair pusher job constituted an equal protection violation. ECF No. 50 at 5.

The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution provides that "[n]o State shall…deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. Here, Plaintiff is not alleging that Defendant Bourne discriminated against Plaintiff because of his race; rather, he is alleging that Defendant Bourne believed two racist inmates and then discriminated against him by firing him from his wheelchair pusher job.

Thus, it appears Plaintiff is putting forth a "class of one" theory of equal protection and alleging that he was "intentionally treated differently from others similarly situated" without any "rational basis for the difference in treatment." *Hill v. Borough of Kutztown*. 455 F.3d 225, 239 (3d Cir. 2006) (internal citations omitted). To allege such claim, Plaintiff must show "(1) the

---

[8] To the extent Plaintiff is alleging a claim of negligence against Defendant Bourne, this Court finds that such claim is barred by sovereign immunity. *See* Title 1 Pa. C.S. § 2310 ("Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.") In the Second Amended Complaint, Defendant Bourne is clearly alleged to have been negligent within the scope of her employment, as the actions took place during her working hours and in connection with her role as Unit Manager. ECF 50 at 4–5. Accordingly, absent any exception or specific waiver of sovereign immunity by Pennsylvania statute, this Court finds that Plaintiff's negligence claim against Defendant Bourne is barred by sovereign immunity.

defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243.

Here, Plaintiff has failed to show that others were treated differently than he was, and even if he had shown other inmates being treated differently, he has also failed to show that Defendant Bourne acted intentionally. Rather, in the Second Amended Complaint, Plaintiff specifically alleges that Defendant Bourne's actions were negligent.[9]

### iii. *Plaintiff Has Failed to Plausibly Allege an Eighth Amendment Claim.*

Reading the Second Amended Complaint liberally, the Court finds it is also possible Plaintiff is alleging that Bourne violated his Eighth Amendment rights by firing him from his wheelchair pusher job, that Walker violated his Eighth Amendment rights by failing to timely inform Plaintiff of his guest-visitor's arrival, or that Novak and Lamas violated his Eighth Amendment rights by terminating his employment from the FSD and not allowing him to work another job or receive GLP-pay until he returned to work in the FSD for 60-days. However, upon careful review of the Amended Complaint, the Court finds none of these potential claims are sufficiently alleged to withstand Defendants' present Motion to Dismiss.

The Eighth Amendment protects individuals against the infliction of "cruel or unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prisons have a duty to

---

[9] Additionally, to the extent Plaintiff is alleging a First Amendment claim against Defendant Bourne on the grounds that Defendant Bourne violated prison policy by allowing two racist inmates to "be in control" of Plaintiff by telling Defendant Bourne that Plaintiff was not working, which resulted in his termination from his wheelchair pusher job, the Court finds that, taking the facts in the light most favorable to the Plaintiff and reading the allegations in the Second Amended Complaint as true, such claim is unsustainable, as a Plaintiff has not alleged that Defendant Bourne has violated any clearly established statutory or constitutional right of a prison inmate. *Tindell v. Department of Corrections*, 87 A.3d 1029, 1035 (Pa.Cmwlth.2014) (explaining that administrative rules and regulations "do not create rights in prison inmates").

provide "humane conditions of confinement." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To violate the Eighth Amendment, a deprivation "must result in the denial of the minimal civilized measure of life's necessities." *Watson v. Secretary Pa. Dept. Corrections*, 567 Fed. Appx. 75 (3d Cir. 2014).

A prison official's one-time failure to timely inform an inmate of a guest-visitor's arrival resulting in a delayed visit does not constitute the significant deprivation of rights contemplated by the Eighth Amendment. Likewise, removal from a particular prison job or lack of choice over which prison job one is assigned to does not fall within the scope of an Eighth Amendment violation. *Cf. Watson*, 567 Fed. Appx. at 78 (dismissing plaintiff's claim of Eighth Amendment on the grounds that a "failure to reinstate [the plaintiff] in his prison job did not violate his Eighth Amendment right to be free from cruel and unusual punishment). Absent any additional allegations involving the denial of humane conditions of confinement or any of life's necessities, the Court finds that Plaintiff has failed to plausibly allege an Eighth Amendment claim.

    **iv.** ***Plaintiff Has Failed to Plausibly Allege a Fourteenth Amendment Due Process Claim.***

Upon careful review of the Amended Complaint, the Court finds that Plaintiff is also possibly alleging that requiring Plaintiff to work 60 days in the FSD before working another job or being placed on GLP-pay constitutes a Fourteenth Amendment due process violation. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order for Plaintiff to state a cognizable claim that he was without due process, he must either have a liberty or a property interest in the right being deprived. *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989). "A prison inmate only has a liberty interest in a condition of confinement if it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Key v.*

*McKinney*, 176 F.3d 1083, 1086–87 (8th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Restriction from employment is among the "conditions of confinement that [Plaintiff] should reasonably anticipate during his incarceration." *Fountain v. Vaughn*, 679 Fed. Appx. 117, 120 (3d Cir. 2017). In other words, "there is no liberty interest in a prison job arising from the Due Process Clause." *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012). Further, an inmate also does not have a protected interest in a specific prison job assignment. *See Quinlan*, 866 F.2d at 630 ("[t]raditionally, prisoners have had no entitlement to a specific job, or even any job").

Assuming Plaintiff's allegations are true, Plaintiff has not pled facts showing any constitutionally protected right being denied. Rather, Plaintiff has pled that he asked to be removed from the FSD as relief for his 2018 October Grievance, that he was then allowed to stop working at the FSD, and that he was subsequently informed he would have to return to the FSD for 60-days before seeking other employment or being placed on GLP-pay. Thus, the Court finds Plaintiff has failed to plead facts sufficient to establish a Fourteenth Amendment claim that could support his asserted § 1983 claims. *Cf. Fountain v. Vaughn*, 679 Fed. Appx. 117, 120 (3d Cir. 2017) (finding a plaintiff's "claim related to his loss of prison employment is not cognizable under the Due Process Clause…[because] restriction from employment and prison programs are among the conditions of confinement that [plaintiff] should reasonably anticipate during his incarceration").

### IV. CONCLUSION

For the foregoing reasons, this Court will GRANT Defendants' Motion to Dismiss and dismiss Plaintiff's Second Amended Complaint in its entirety. The Court will dismiss with prejudice, as Plaintiff has had multiple opportunities to amend his complaint and the Court can

see no construction of the facts alleged that would state any plausible claim for relief. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility).

                                                   **BY THE COURT:**

                                                   **/s/ Chad F. Kenney**
                                                   _____
                                                   Chad F. Kenney, Judge